## EGG v. ROCHESTER RY. CO.

(Supreme Court, Appellate Division, Fourth Department. November 14, 1906.)

CARRIERS—INJURIES TO PASSENGER—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an action for injuries received while attempting to board a street car, evidence examined, and *held* not to show negligence on the part of the motorman.

Appeal from Trial Term, Monroe County.

Action by Jacob Egg against the Rochester Railway Company for injuries sustained while attempting to board one of defendant's cars. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Cogswell Bentley, for appellant.

Charles E. Callahan, for respondent.

NASH, J. The plaintiff attempted to board one of the defendant's cars near the corner of Main Street East and Clinton avenue, in the city of Rochester, at a cross-walk, which is the usual stopping place for cars going west on Main street. The plaintiff testified:

That he reached the crossing about a quarter to 5 o'clock in the afternoon of the day on which he was injured, and waited for a car. That he raised his hand as the car was coming. "I seen the street car, and when I raised up my hand to the street car there was nothing between us. I didn't have any packages or bundles or anything in my hands at the time. The car very nearly stood still. I think the car stood real still as I put one foot on the step. I took hold of the bar with my hand. I took hold of the rail with my right hand. As I done that, the car went suddenly and throwed me down, and my leg got under the steps and it sprained it. The car went fast. It went sudden, and when the conductor saw that I was dragging along he stopped the car. I can't tell how far I dragged along—7, 8, or 10 feet, or more."

He further testified on cross-examination as follows:

"When the car came along, I was looking towards the motorman. I waved my hand to him. Q. Did the motorman look at you? A. That I don't know. Q. Did he make any signal to you? A. I didn't see that. Q. Did the car come to a stop? A. The car stopped, but they saw there was only one man getting on, and he motioned the car ahead. Q. You say the car had stopped? A. He didn't stop exactly, but a child could run along with it. It was going along real slow, as I described, and when I had my foot on it shot out. Q. Did you see the conductor when you started to board the car? A. The conductor was there. Q. Where? A. Behind, where he belongs, in the rear vestibule. I don't know which way he was looking. Q. What was he doing? A. As he saw that I fell, he gave the signal to stop, and then got out and helped me in. He didn't do anything when I started to get on. Q. Did you see any one else in the rear vestibule? A. I don't remember. Q. Did you hear any signal given to start the car—any bells rung? A. I don't know that. I don't hear good anyway. Q. Did you see the conductor give any signal as you started to get on? A. How can I see anything like that? When they throw you down, how can you see such stuff? Q. The question is repeated. A. That I don't know."

Kirn, a passenger, called by the defendant, testified: That he stood in the rear vestibule of the car, between the door and the controller. The conductor stood just inside the door. A young man got on there at

the cross-walk. After the young man got on the conductor gave the signal to start the car. After the car had started there was a man came out to the rear end of the car and got hold with his left hand, came from behind the car. Just as the car started this man came running from behind and grabbed hold of the rear handle and tried to get on, and had one foot on and it slipped off. That he helped the man on and hollowed to the conductor to stop the car. The conductor testified that he was inside the car; that there was no one else besides this young man spoken of on the cross-walk, or near it, at the time the car started on; that he gave the signal for the car to start, and started forward in the car, when his attention was attracted by a call from the vestibule to stop the car, which he did, and went to the rear, where he found the plaintiff, who had been helped aboard the car, and took his name. The motorman testified that he saw the young man at the crossing and stopped the car for a complete stop about a second, and got the signal to go ahead. He was looking at the crossing; did not see any one but the young man.

The court, at the request of the defendant, charged the jury that no recovery could be based on any negligence on the part of the conductor. As that was the law of the case, for the purpose of the trial the verdict of the jury must be regarded as based solely upon the negligence of the motorman, the only other person engaged in operating the car. The motorman could not have been charged, upon the evidence, with any negligence. The accident occurred at the rear of the car, at a crossing, where it was the duty of the motorman to start the car ahead upon receiving the conductor's signal, which he did. No negligence can be attributed to the act of the motorman in starting the car under the circumstances, and therefore the judgment entered upon the verdict must be reversed.

Judgment and order denying the motion for a new trial reversed, and a new trial granted, with costs to the appellant to abide the event, upon questions of law only. All concur.